IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**DEON POWELL,**

    **Movant,**

v.                              **Civil Action No. 3:14-cv-25794**
                                       **(Criminal No. 3:11-cr-00177-01)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court is Movant Deon Powell's "Motion to Vacate, Set Aside or Otherwise Correct a Sentence by a Person in Federal Custody, Pursuant to 28 U.S.C. § 2255." (ECF No. 199). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). After thorough consideration of the record, the undersigned conclusively **FINDS** that Powell is not entitled to the relief requested. For the reasons that follow, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** Powell's motion, **DISMISS** this civil action with prejudice, and remove it from the docket of the court.

### I.    Factual and Procedural Background

Deon Powell ("Powell") is a federal prisoner challenging his conviction and sentence on the ground that he allegedly received ineffective assistance of counsel. The case against Powell began with a criminal complaint filed in the United States District

1

Court for the Southern District of West Virginia, Huntington Division, on June 30, 2011. According to an affidavit submitted in support of the criminal complaint, law enforcement authorities received information from a confidential informant that Powell was distributing heroin from a residence located in Huntington, West Virginia. (ECF No. 1-1).[1] On June 16, 2011, the authorities sent the confidential informant to the residence to make a controlled purchase of .88 grams of heroin from Powell. (*Id.*).

Following the controlled purchase, the authorities executed a state-issued search warrant on the premises and recovered $19,020.00 and $3,755.00 in currency. (ECF No. 216 at 3-4). Powell was thereafter indicted by a federal grand jury for the following offenses:

> **Count One** – Conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1).
>
> **Count Two** – Distribution of heroin in violation 21 U.S.C. § 841(a)(1).
>
> **Count Three** – Aiding and abetting the possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

(ECF No. 3).

Powell was initially represented in his criminal case by Lex A. Coleman, Assistant Federal Public Defender, and later by R. Lee Booten, CJA panel attorney, but both attorneys withdrew from representation early in the case due to conflicts. (ECF Nos. 35, 36, 73, and 76). On January 26, 2012, the Court appointed CJA panel attorney, John Carr ("Carr"), to represent Powell. (ECF No. 77). At Carr's initial meeting with Powell, they discussed whether the search of the premises, which led to the recovery of additional drugs and currency, had been conducted pursuant to a valid and authentic search

---

[1] The ECF citations herein correspond to Powell's criminal case: *USA v. Powell*, Case No. 3:11-cr-00177, unless otherwise noted.

2

warrant. (ECF No. 216 at 4; ECF No. 220 at 27). The inquiry into the validity of the search warrant stemmed from the fact that the application and complaint, but not the actual search warrant, were produced in discovery. In addition, the original search warrant was not on file in the relevant circuit court. (*Id.*). Carr recalled having a previous, unrelated state court case in which an application and complaint for search warrant had been re-labeled and represented to be the search warrant when, in fact, a search warrant did not exist. (ECF No. 220 at 70-71). From Carr's perspective, his prior experience, combined with the absence of a search warrant in Powell's discovery, made the validity of the search warrant a key issue.

Ultimately, a copy of the search warrant was produced to Powell in discovery. Nonetheless, Powell and/or Carr continued to doubt the authenticity of the search warrant. According to the record, Powell questioned why the original search warrant had never been filed with the circuit clerk's office. In addition, he believed that the judge's signature on the application and complaint for search warrant did not match the signature on the copy of the search warrant. (ECF Nos. 216 at 4; ECF No. 220 at 27).

At some point between January 27, 2012 and March 12, 2012, Carr presented Powell with a plea agreement ("the first plea agreement"). The first plea agreement had already been shown to Powell by his prior counsel, Lee Booten, but was sent to Carr when he assumed representation of Powell. Accordingly, Carr felt obligated to discuss the plea agreement with Powell. (ECF No. 220 at 15). The first plea agreement provided that Powell would plead guilty to Count Two of the indictment in exchange for dismissal of the other charges against him. (ECF No. 213-1). As relevant to Powell's motion, the first plea agreement also stipulated to a base offense level of 26 under the Sentencing Guidelines and to the relevant conduct to be offered at sentencing, including the drug equivalency

3

calculations that correlated with the $19,020.00 and $3,755.00 recovered in the search. (*Id.*) During a meeting with Carr, Powell rejected the first plea agreement, indicating that he wanted to proceed to trial. In addition, he disagreed that the currency seized during the search should be attributed to him as relevant conduct. (ECF No. 220 at 15-18).

Carr proceeded to prepare Powell's case for trial. On March 12, 2012, Carr filed a motion to suppress the evidence seized in the search, (ECF No. 95), a motion to compel the production of the search warrant, (ECF No. 96), and a motion to dismiss the indictment against Powell, (ECF No. 97). Prior to attending the hearing on the pretrial motions, on March 21, 2012, Carr went to the Cabell County Courthouse to investigate the authenticity of the search warrant. Carr and another CJA attorney, Ms. Haley Bunn, met in person with Cabell County Circuit Judge Paul T. Farrell ("Judge Farrell"), the Judge whose signature purportedly appeared on the search warrant. (ECF No. 216 at 4-5). When questioned, Judge Farrell recalled certain circumstances surrounding the warrant, confirmed that he had signed the warrant, and acknowledged that the signature appearing on the copy of the search warrant produced in discovery was, indeed, his signature. (*Id.* at 5). According to Carr, he and Ms. Bunn met with Powell that same day and informed Powell of Judge Farrell's statements. Carr advised Powell that given Judge Farrell's expected testimony, Carr did not intend to subpoena Judge Farrell to testify at the pretrial motions hearing. Carr explained that there was no longer a good faith basis for doing so. Powell strongly disapproved of Carr's decision. (*Id.*). Nevertheless, during this meeting, Powell asked Carr to solicit a plea offer from the Government that did not contain any agreement as to base offense level or relevant conduct. (ECF No. 216 at 5).

On March 26, 2012, the court held a hearing on Powell's motion to suppress, motion to compel, and motion to dismiss. (ECF Nos. 226-15 through 226-18). At the

4

hearing, Carr presented several arguments in support of the motion to suppress, including the argument that the original search warrant was missing, that the information used in the affidavit to obtain the search warrant was insufficient, and that the search of the vehicle in the garage was outside of the scope of the search warrant for the residence. (ECF No. 226-15 at 2-10; ECF No. 226-16 at 1-9). However, Carr conceded to the court that in the interim between filing the motion to suppress and the hearing, the government had produced a copy of the search warrant and Judge Farrell had personally confirmed his signature on the document. (ECF No. 226-15 at 3-4). Carr requested additional time to investigate the issue, as the search warrant was only recently provided. (Id. at 4). The court denied without prejudice the motion to suppress on the issue of the missing original search warrant, denied the motion to suppress as to the sufficiency of the affidavit used to secure the search warrant, and took under consideration the motion to suppress evidence obtained from the search of the vehicle. (ECF No. 226-15 at 4; ECF No. 226-16 at 2-4; ECF No. 226-16 at 8-9).

  A couple of days before trial, on April 1, 2012, Carr presented Powell with a second plea agreement ("the second plea agreement"), which did not contain any stipulation as to base offense level or relevant conduct. (ECF No. 220 at 23; ECF No. 213-2). According to Powell, Carr told him that his base offense level under the second plea agreement would be 12, which translated to a sentence of 12 to 18 months' imprisonment. (ECF No. 178 at 5-6; ECF No. 220 at 22). Carr did not explain how Powell's relevant conduct might affect his sentence; instead, Carr left Powell with the impression that his sentence would be capped at 18 months. (ECF No. 220 at 24). Despite receiving this highly favorable offer, Powell rejected the second plea agreement and insisted on proceeding to trial. (ECF No.

220 at 23-24).[2]

Carr proceeded to file numerous motions in limine on Powell's behalf, including a motion in limine seeking to exclude the search warrant on the basis that it was not an authentic copy of the original. (ECF No. 126). The court held a hearing on the above motions on the morning of April 3, 2012, just prior to beginning Powell's trial. (ECF Nos. 226-2 through 226-6). At the hearing, the court denied the motion to exclude the copy of the search warrant as moot, because the government stated that it did not intend to introduce it at trial. (ECF No. 226-3 at 8). Carr also reasserted his prior motion to suppress the evidence seized in the search, which the court also denied. (ECF No. 226-3 at 3-7).

Upon concluding the motions hearing, Powell expressed interest in discussing a plea agreement. The court recessed trial to allow the parties an opportunity to talk. Later that morning, Powell executed a plea agreement which conformed to the first plea agreement that he was offered. (ECF No. 136).

The court subsequently conducted a hearing under Rule 11 of the Federal Rules of Criminal Procedure to ensure that Powell's guilty plea was intelligent and voluntary, that there was a factual basis to support his plea, and that Powell understood his rights. Powell demonstrated to the court that he was competent to enter a plea, and he acknowledged that he was satisfied with the legal representation provided by Carr. (ECF No. 226-4 at 6-7). When asked about the factual basis for his plea, Powell testified under oath that he distributed .88 [grams] of heroin at Jimmy Meeks's residence located in Huntington,

---

[2] In contrast to Powell's testimony, Carr recalled "repeatedly and exhaustively" discussing the concept of relevant conduct with Powell and advising him that, without a stipulation, the Government intended to seek all possible relevant conduct, including historical transactions and currency equivalencies. (ECF No. 216 at 6-8, 29, 37, 39, 41, 42).

6

West Virginia on June 16, 2011 in exchange for $200.00. (ECF No. 226-5 at 5-6). Powell further conceded that law enforcement officers seized slightly over $19,000.00 in currency from a vehicle located at Meeks's residence and another $3,755.00 that belonged to Powell. (Id. at 6-7). Having concluded the Fed. R. Crim. P. 11 hearing, the court accepted Powell's guilty plea. (ECF No. 226-6 at 7-8).

Powell's sentencing hearing was held on August 20, 2012. (ECF No. 179). Carr again argued that the $19,020.00 found in the trunk of the vehicle parked in Meeks's garage and the $3,755.00 that was allegedly found "on" Powell should not be attributed to Powell. (ECF No. 179 at 15-47). Despite Carr's arguments, based upon substantial evidence provided by the government, the court concluded that at least $19,020 was attributable to Powell. The court reasoned that Powell was responsible for the bulk of the drugs found at the residence. Since the $19,020.00 was found in a bag that was identical to another bag containing Powell's narcotics, the evidence tied that currency to Powell. (*Id.* at 49). With respect to the $3,755.00, and to Powell's objection to the base offense level, the court concluded that these issues were moot, because the $19,020.00, when converted to marijuana equivalency, resulted in a base offense level of 26—the level stipulated in the plea agreement. (*Id.* at 49-50). At the conclusion of the hearing, the court sentenced Powell to a prison term of 71 months, followed by 3 years of supervised release. (*Id.* at 80-81).

On September 15, 2014, Powell filed the instant Motion to Vacate, Set Aside, or Otherwise Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Powell's Motion"). (ECF No. 199). In the motion, Powell alleges ineffective assistance of counsel in relation to his plea agreement. Powell claims that, but for Carr's inadequate advice, Powell would not have accepted the plea agreement under which he was convicted

and sentenced. On November 17, 2014, Powell was appointed counsel to represent him in this habeas proceeding. (ECF No. 210). The court held an evidentiary hearing on January 26, 2015 and established a briefing schedule for the parties. (ECF Nos. 220 and 215). Powell filed his supplemental brief, (ECF No. 223); the government filed its response, (ECF No. 226); and the prescribed time period for a reply has expired. Thus, Powell's motion is fully briefed and ready for determination.

## II. Legal Standard

It is well-settled that once a trial court conducts a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure and finds that the guilty plea was entered knowingly and voluntarily, the validity of the guilty plea is deemed conclusively established absent compelling circumstances. *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1294–95 (4th Cir. 1992) (citing *Tollett v. Henderson,* 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235 (1973)); *Via v. Superintendent, Powhatan Corr. Ctr.,* 643 F.2d 167, 171 (4th Cir. 1981). A defendant's statements and guilty plea "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 162152 L.Ed.2d 136 (1977).

However, a guilty plea does not bar collateral review of allegations of ineffective assistance of counsel insofar as the alleged ineffectiveness bears on the voluntariness of the guilty plea. *Fields*, 956 F.2d at 1296–97 (citing *Hill v. Lockhart,* 474 U.S. 52, 53–59, 106 S.Ct. 366, 367–70, 88 L.Ed.2d 203 (1985)). Ineffective assistance of counsel claims, including those asserted in connection with guilty pleas, are governed by the settled doctrine established in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Fields*, 956 F.2d at 1296–97.

The Supreme Court of the United States ("Supreme Court") has long held that the

Sixth Amendment of the United States Constitution provides each criminal defendant with "the right to the effective assistance of counsel." *Strickland,* 466 U.S. at 686. While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate [...] defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001) (citing *Strickland,* 466 U.S. at 685-86).

In *Strickland, supra*, the Supreme Court adopted a two-prong test for determining whether a criminal defendant received ineffective assistance of counsel. A defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Counsel's performance must be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

In evaluating whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance [... and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). "The question [under *Strickland*] is whether an attorney's representation amounted to incompetence under prevailing

9

professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S.Ct. at 787). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## III. Analysis

Powell presents three arguments in support of his claim that his counsel was deficient under the Sixth Amendment. Powell contends that (1) he was forced into taking a plea agreement, (2) his counsel failed to do enough to prevent the $19,000.00 [*sic*] in currency found in the vehicle from being attributed to him, and (3) his counsel did not do anything to stop the $3,755.00 in currency that was found near Powell from being attributed to him. (ECF No. 223). The undersigned finds that Powell's ineffective assistance of counsel claims are entirely without factual or legal merit.[3]

---

[3] Although not previously raised, it is clear under the fully developed record that Powell's motion was not filed within the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Therefore, the undersigned **FINDS** that Powell's motion should be denied on the additional basis that it was not timely filed.

### A. Powell's argument that he was forced to take the plea agreement

In Powell's first ground for relief, he contends that he was forced to take an unfavorable plea agreement, because Carr's actions placed Powell in such a precarious position that he had no other viable option. Powell claims that Carr assured him that law enforcement officers had not obtained a valid warrant; consequently, the evidence seized during the search of Meeks's residence and the vehicle would be suppressed. (ECF No. 220 at 29-35; ECF No. 223 at 6). Powell argues that Carr then "stabbed [him] in [the] back" by disclosing to the court that Judge Farrell recalled signing the search warrant and had acknowledged his signature on the copy of the warrant. (ECF No. 220 at 35; ECF No. 223 at 6). Once Carr made this disclosure to the court, Powell maintains that he was forced to take the first plea agreement, which was less beneficial to him than the second plea agreement. (ECF No. 220 at 32; ECF No. 223 at 6-7). Powell complains that if he had known that the evidence was not going to be suppressed, he would have taken the "better" plea agreement, or he would have proceeded to trial. (ECF No. 223 at 6-7).

It is well-established that "[w]here, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56–57 (citing *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). Counsel's actions are not evaluated in hindsight, but based on the information available at the time. *Strickland,* 466 U.S. at 685-86. After considering the record as a whole, the undersigned **FINDS** that the evidence clearly establishes that Carr's actions fell squarely within the realm of reasonable professional services, and thus, were not objectively unreasonable under the first *Strickland* prong.

As is emphasized in *Strickland* and associated cases, "habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125, 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)); *Strickland,* 466 U.S. at 685-86. In addition, the law imposes a strong presumption that counsel's choices in representation of a client fall within a wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 685-86. The undersigned finds it implausible that an attorney with Carr's legal education, training, and experience would ever guarantee the outcome of a court ruling to any client. However, even assuming that Carr did assure Powell that the evidence seized during the search would be suppressed, his advice was not objectively unreasonable in light of the facts known to him at the time the advice was given. *See Strickland,* 466 U.S. at 685-86; *see also Premo*, 562 U.S. at 125, 131 S. Ct. at 741. Carr's testimony shows that he had a prior case in West Virginia state court in which he discovered that local law enforcement officers were cutting and pasting affidavits and complaints for search warrants and relabeling them as search warrants, when the documents were not actually search warrants. (ECF No. 220 at 70-71). When Carr assumed representation of Powell, Carr noticed that the government had produced in discovery an affidavit and complaint for the search warrant of Meeks's residence, but had not produced a copy of the search warrant itself. (ECF No. 216 at 4; ECF No. 220 at 27). Carr's further investigation of both the magistrate court and circuit court case files revealed a troubling absence of the original search warrant. It had not been returned or filed with either court clerk, as was required by the West Virginia Rules of Criminal Procedure. (*Id.*). Consequently, there was no evidence that a search warrant had ever existed—until later, when the police produced a

copy of the warrant and an inventory. Therefore, Carr's representation, even alleged assurance, that the evidence seized in the search would be suppressed due to the lack of a search warrant cannot be considered a "manifest deficiency in light of the information then available." *Premo, supra.*

Just as important to the *Strickland* analysis, however, Carr's actions did not prejudice Powell in any manner. Powell contends that if not for Carr's "faulty advice that the search warrant was 'fake' and the search warrant would be suppressed," it was "reasonably probable" that Powell would have accepted the March 23, 2012 plea offer and "the sentence would have been lighter" or "even reasonably probable that [Powell] would have been acquitted at a jury trial." (ECF No. 223 at 7). The record simply does not substantiate these contentions.

First, Powell cannot demonstrate a reasonable probability that he would have proceeded to trial if not for Carr's advice that the evidence being attributed to him would be suppressed. *Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (In the context of guilty pleas, the *Strickland* "prejudice" requirement is satisfied by a showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Indeed, the only hope Powell had of succeeding at trial was for the evidence to be suppressed. Carr took extraordinary steps to discredit the validity of the search warrant. Unfortunately for Powell, and through no fault on the part of Carr, the search warrant was established to be valid. As an officer of the court, Carr was ethically bound to report the results of his investigation. Powell knew prior to March 26, 2012 that the search warrant had been issued by Judge Paul Farrell. Powell additionally knew that Judge Farrell would testify to the warrant's authenticity if questioned. On March 26, 2012, the court heard Powell's motion to suppress the evidence obtained during execution of

13

the search warrant, and Powell essentially lost the motion. Consequently, Powell, who was present at the hearing, knew full well before the day of trial that the evidence collected at Meeks's residence was likely going to be admitted at trial. Regardless of the outcome at the hearing, Powell maintained his desire to proceed to trial. Absolutely nothing in the record corroborates Powell's claim that he was forced to plead guilty on the morning of trial, because only then did he learn that the evidence obtained via the search warrant would not be suppressed. To the contrary, the transcript of the pretrial hearing on April 3, 2012 suggests that Powell finally came to his senses on the morning of trial, accepted the magnitude of the evidence against him, and struck a deal. (ECF No. 150).

Second, the record also does not support Powell's statement that he would "probably" would have taken the "better" plea offer if not for Carr's allegedly faulty advice. (ECF No. 223). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409, 182 L. Ed. 2d 379 (2012). As previously stated, Powell knew by the end of the day on March 26, 2012 that his chance of suppressing evidence based on a questionable search warrant had morphed from promising to unlikely. Consequently, Powell received the second, or "better," plea agreement **after** Carr allegedly "stabbed [him] in the back," to use Powell's specific words, by honestly reporting Judge Farrell's recollections.

Powell concedes that he was presented with the second plea agreement on the Sunday before trial, which would have been April 1, 2012, and he reviewed and rejected it at that time. (ECF No. 220 at 23-24). Because Powell refused the second plea agreement after Carr, Powell, and the court were well aware of Judge Farrell's statement that the

14

search warrant was authentic, it stands to reason that Powell could not have made his decision based on faulty advice that the motion to suppress was going to be successful. Moreover, the record confirms that, contrary to Powell's current recollection, he received *both* versions of the plea agreement on the morning of trial and was given the option of choosing either version. (ECF No. 150 at 22-23; ECF No. 178 at 12). Counsel spent considerable time with Powell on the day of trial, specifically discussing the risks and benefits associated with each agreement's treatment of relevant conduct. (ECF No. 150 at 22-24). Powell chose the first plea agreement with a stipulation of relevant conduct at an adjusted offense level of 26. (ECF No. 178 at 12). He then appeared at a Rule 11 proceeding and expressly confirmed to the court his understanding of the terms of the agreement, what it required of him, and the potential uses of the stipulation of facts. (ECF No. 150 at 33-34). Powell acknowledged that he had reviewed every paragraph of the plea agreement with counsel and wished to have the agreement accepted by the court. (*Id.* at 34). As such, there is no factual basis for Powell's claim that he "probably would" have taken the second plea agreement if not for Carr's advice regarding the search warrant.

In any event, while it does not guide the undersigned's recommendation, it should be noted that the second plea agreement was not more favorable to Powell, as Powell suggests in his Motion. As discussed in preceding sections, Powell was offered two plea agreements. The first plea agreement provided that the base offense level would be 26 and stipulated to relevant conduct to be offered at sentencing. (ECF No. 213-1 at 5 and 8 and 220 at 16-18). The second plea agreement did not stipulate to a base offense level or relevant conduct. (ECF No. 213-2 and 220 at 21-23). Powell claims that the plea agreement that he ultimately accepted, which substantively conformed to the first plea agreement offered to him, was detrimental to him and resulted in a longer sentence. (ECF

15

No. 223). However, absent this agreement, Powell faced much greater punitive exposure.[4] As emphasized by Carr, if Powell elected to accept the second plea agreement, the government intended to introduce significant evidence of historical drug sales by Powell, which would have greatly enhanced his relevant conduct. If Powell had proceeded to trial, he faced two additional counts under the indictment. The record simply does not support a finding that Powell received a less favorable deal by accepting the first plea agreement. In fact, the evidence before the court leads to the opposite conclusion.

Finally, in his first brief in support of the § 2255 motion, Powell contends that Carr should have advised him to take an *Alford* plea once Powell decided to plead guilty. Powell argues that an *Alford* plea would have provided him with a "valid ground to challenge the government assessing $19,000.00 (dollars) [*sic*] being added to his culpability via relevant conduct." (ECF No. 200 at 3). Powell's criticism in this regard is misplaced. To begin, the Government never offered Powell an agreement that included an *Alford* plea option, nor is there evidence that Powell would have been permitted to enter such a plea by the court. Powell may have insisted on an *Alford* plea, but such insistence may have resulted in the Government withdrawing its offer to dismiss the other charges against Powell. Moreover, entering an *Alford* plea was not necessary to achieve Powell's stated purpose. Indeed, the stipulation of facts contained in the plea agreement signed by Powell did **not** require him to concede ownership of the $19,020. Powell had every opportunity at sentencing to challenge the Government's assertion that the currency should be

---

[4] Although Powell testified that Carr did not explain relevant conduct and told Powell that his sentence would be capped at 12 to 18 months, (ECF No. 220 at 24-25), this testimony is not credible in light of Powell's other statements. For example, Powell also testified: "[Carr] had me thinking that it was better to take the plea with the relevant conduct in it because at least I knew exactly what I would be getting as far as being capped at Level 26." (ECF No. 220 at 25). This admission directly contradicts Powell's statement that he did not have any conception of relevant conduct and how it could bear on the second plea agreement.

16

attributed to him. In that vein, Carr strenuously objected to the $19,020 being used to determine Powell's relevant conduct. Carr's efforts were not constitutionally ineffective simply because the court concluded, after hearing the evidence, that the money belonged to Powell and was the fruit of his drug trafficking activity.[5]

In this matter, Powell received a lighter sentence than he faced under either other possibility: trial or the second plea agreement. The fact that the plea agreement which he signed was the most favorable of the three options available to him is further evidence that Powell received the effective assistance of counsel and that he entered a voluntary and intelligent guilty plea. *See Fields*, 956 F.2d at 1299 ("The voluntary and intelligent character of [the defendant's] plea bargain is further evidenced by the fact that the plea agreement was favorable to him and accepting it was a reasonable and prudent decision."). Therefore, his motion should be denied.

### B. Powell's contention that Carr did not do enough to prevent the currency seized in the search from being attributed to him

As to Powell's remaining claims, he provides no argument or evidence to substantiate his allegation that Carr was ineffective under the Sixth Amendment by not doing enough to prevent the $19,020.00 from being attributed to Powell as relevant conduct, or by not doing anything to prevent the $3,755.00 from being attributed to Powell as well. Thus, the undersigned disposes of these bare claims expeditiously.

In consideration of Powell's failure to properly present his ineffective assistance of counsel claims regarding the currency which was attributed to him, the undersigned will not undergo an exhaustive written recitation and analysis of Carr's lengthy arguments

---

[5] To the extent Powell believes that an *Alford* plea does not result in an adjudication of guilt, he is incorrect. *See United States v. King*, 673 F.3d 274, 281–82 (4th Cir. 2012) (A court's acceptance of an *Alford* plea, like an acceptance of a guilty plea, indisputably qualifies as an "adjudication.")

17

presented on Powell's behalf. It is not the province of the court to articulate and present Powell's claims for him. He does not submit even the barest of support for his claims that Carr's actions were ineffective in regard to the currency seized from the premises.

The undersigned notes that after a thorough review of the record, Powell's ineffective assistance of counsel claims regarding the currency seized in the search are unsubstantiated and contradicted by the evidence before the court. There is no evidence to support that Carr's efforts regarding the evidence seized failed to conform to the level of competence demanded of him by the Sixth Amendment. Further, the undersigned finds no evidence to support that Powell was prejudiced by Carr's representation.

As discussed, *supra*, Carr took many steps to attack the search warrant and prevent the evidence which was seized from being attributed to Powell. Carr aptly identified that the search warrant was "missing" and thoroughly investigated the issue in an effort to suppress the evidence at trial. He filed a motion to suppress and argued not only that the original search warrant was missing, but also that the information used in the affidavit to obtain the search warrant was insufficient; he further argued that the search of the vehicle in the garage on the premises was outside of the scope of the search warrant for the residence. (ECF No. 95; ECF No. 226-15 at 2-10; ECF No. 226-16 at 1-9).

Carr also filed and argued a motion to compel the production of, *inter alia*, the search warrant, (ECF No. 96; ECF No. 226-17 at 9-11; ECF No. 226-18 at 1-5), as well as a motion to dismiss the indictment against Powell. (ECF No. 97; ECF No. 226-16 at 9-11; ECF No. 226-17 at 1-10). Carr then filed and argued numerous motions in limine, including a motion in limine seeking to exclude the copy of the search warrant at trial, (ECF No. 126; ECF No. 226-3 at 7-8), and Carr reasserted the motion to exclude the evidence seized in the search (ECF No. 226-3 at 3-7). Finally, at sentencing, Carr again

argued that the $19,020.00 found in the trunk of the vehicle in the garage and the $3,755.00 which was alleged to have been found "on" Powell should not be attributed to Powell. (ECF No. 179 at 15-51). The $3,755.00 actually was not attributed to Powell given that the remaining currency and underlying charge of conviction already placed Powell at the agreed-upon offense level of 26.

In conclusion, the record, specifically including the provisions cited above, unequivocally reflects that Carr zealously represented Powell's interests on the issue of the evidence seized pursuant to the search warrant. Carr was diligent in investigating a basis for the motion to suppress, and presented all reasonable grounds, law, and argument in favor of suppression of the evidence. At sentencing, Carr presented every available argument to reduce Powell's relevant conduct. Consequently, Carr's representation was not insufficient under *Strickland* and Powell's motion should be dismissed as it is entirely without merit.

## IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the motion filed by Powell entitled "Motion to Vacate, Set Aside or Otherwise Correct a Sentence by a Person in Federal Custody, Pursuant to 28 U.S.C. § 2255," (ECF No. 199), be **DENIED**, and that this civil action be **DISMISSED** and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant

shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to counsel of record and Attorney John A. Carr.

**FILED:** August 11, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge